UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANCES R. KARLIN,

    Plaintiff,

    v.

MAURITZON, INC., an Illinois Corporation,

    Defendant.

No. 10 C 7077
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Frances R. Karlin filed this action against Mauritzon, Inc., an Illinois corporation and Ms. Karlin's former employer. Ms. Karlin alleges, *inter alia*, that her employment was terminated in violation of Title VII of the Civil Rights Act in retaliation for engaging in certain protected activity. *See* 42 U.S.C. §§ 2000e *et seq*. Defendant now moves for summary judgment. For the following reasons, Defendant's motion is denied.

### BACKGROUND

Mauritzon, Inc., is a family-owned, closely held corporation that manufactures, sells and distributes textile products. Alvin Karlin owned the business for over 60 years; when he retired, his sons Steve and Chuck Karlin assumed ownership. At the time that this suit was filed, Steve and Chuck Karlin held all of Mauritzon's stock in equal shares. Sadly, over the last ten years the brothers have been unable to get along, and a dispute over control of the company has ensued in a lawsuit independent of this action.

Plaintiff is Chuck Karlin's daughter; she began working for the company in 2004. Her brother, Sean Karlin, and her cousin, David Karlin, who is Steve Karlin's son, also work at the company. By mid-2007, Plaintiff asserts that she had complained to Steve Karlin on numerous

1

occasions about two principal issues. One complaint related to the sexually disparaging comments Steve Karlin was allegedly subjecting her to during the lunch hour; the other related to her belief that David Karlin was working demonstrably fewer hours, but nevertheless receiving the same salary that she was earning.

In response to his daughter's wage-related complaint, Chuck Karlin made an allegedly unilateral decision to lower David Karlin's salary in September 2007. Upon learning of this decision, Steve Karlin is alleged to have reacted violently. An argument ensued between the two brothers, culminating in the police being called to the Mauritzon office and Steve Karlin being briefly taken into custody. The next day, Steve Karlin ordered that Plaintiff would begin working remotely from home, rather than in the office.

In April 2009, Plaintiff asserts that she went to the Mauritzon office and informed Steve Karlin that she would be filing formal charges with the Equal Employment Opportunity Commission ("EEOC") for sex-based wage discrimination. Shortly thereafter, Plaintiff was terminated along with several other employees. Shortly after that, a "standstill agreement" was negotiated between Steve and Chuck Karlin providing in part that Plaintiff would be reinstated at a significantly reduced salary – $200 per week as opposed to her previous salary of $1100 per week. Defendant asserts that this reduction reflected the very limited amount of work Plaintiff was actually doing for the company at this time. Plaintiff asserts that the reason she was doing less work was because Steve Karlin had "banned her" from the office and was not giving her assignments to complete.

Plaintiff alleges that, in December 2009, Steve Karlin threatened Chuck Karlin that Plaintiff would be fired if she did not drop the EEOC charges. She also alleges that Steve Karlin threatened Sean Karlin that Sean himself would be fired if he did not persuade Plaintiff to drop

the EEOC charges. Later that month, Plaintiff formally filed charges with the Illinois Department of Labor, and in April 2010, Plaintiff formally filed charges with the EEOC. By August 2010, the standstill agreement had expired, and Plaintiff was fired for the second time. Plaintiff asserts that she was terminated in retaliation for bring the EEOC complaint against the company. Defendant asserts that Plaintiff's termination was prompted by a dramatic downturn in company profits, as well as the disruptiveness Plaintiff's presence in the office is alleged to have caused in connection with the broader Karlin family dispute.

In March 2011, Plaintiff filed a second and supplemental charge of sex discrimination and retaliation with the EEOC. She was issued a right to sue letter later that month. Plaintiff seeks back-pay, compensatory damages and punitive damages.

## DISCUSSION

### A. Legal Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact.

*Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

Title VII forbids employer retaliation where an employee "has opposed any practice made by an unlawful employment practice" by Title VII or has made a charge or participated in a Title VII proceeding. *See* 42 U.S.C. § 2000e-3(a). The anti-retaliation provision operates to prevent employer interference with access to Title VII's remedial mechanisms by prohibiting employer actions that are likely to deter victims of discrimination from pursuing such remedies. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 732-33 (7th Cir. 2008) (and cases cited therein).

There are two recognized methods by which a plaintiff may prove retaliation, though I note parenthetically that it is increasingly difficult to find a practical meaningful distinction between them in light of the cases filed on my docket.[1] The first is somewhat misleadingly named the "direct method." Under the direct method, the plaintiff must show that he or she engaged in protected activity and *as a result* suffered the adverse employment action underlying the complaint.[2] *See Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th

---

[1] See note 4 and accompanying text.

[2] Plaintiffs cite to *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000), for a relatively undemanding standard by which this causal link may be shown – that is, that the protected activity and adverse employment action need be only "not wholly unrelated." I pause here to note that the Seventh Circuit has expressly "jettisoned" this standard in favor of the standard recounted above. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002) (noting *Sauzek*). The adverse employment action must occur "as a result" of the protected activity. *See id*. at 644.

4

Cir. 2002); *see also Argyropoulos*, 539 F.3d at 733 (itemizing a plaintiff's required showing in three parts: (1) the employee engaged in statutorily protected activity; (2) the employee suffered a materially adverse action; and (3) a causal connection exists between the two). Crucially, the Seventh Circuit has expressly clarified that plaintiffs may make this showing with direct *or circumstantial* evidence. *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902-03 (7th Cir. 2006).

If this evidence is uncontradicted, the plaintiff is entitled to summary judgment. *Stone*, 281 F.3d at 644. If, on the other hand, the defendant presents evidence that he would have "taken the adverse employment action against the plaintiff even if he had had no retaliatory motive," and the plaintiff presents no meaningful rebuttal to that evidence, the defendant is entitled to summary judgment.[3] *See id.* Finally, if the plaintiff does rebut the defendant's evidence such that there is an issue of material fact as to whether the adverse employment action really would have been taken without the retaliatory motive, or if the defendant otherwise meaningfully, but inconclusively, contradicts the plaintiff's claim, the case must be tried. *See id.*

Where a plaintiff seeks to prove retaliation with one particular *type* of circumstantial evidence, he or she is said to be proceeding under the second method for proving retaliation – the "indirect method." *See Sylvester*, 435 F.3d at 902-03 (noting that although the direct method of proving retaliation, despite its moniker, may employ "indirect," circumstantial evidence, the important distinction is that it does not involve the "*specific* circumstantial evidence" peculiar to the indirect method). Under the indirect method, the plaintiff is required to show that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing this job in a

---

[3] A defendant may also, of course, present evidence showing that the plaintiff did not engage in protected activity or that no adverse employment action was taken.

5

satisfactory manner." *Stone*, 281 F.3d at 644; *see also Argyropoulos*, 539 F.3d at 733 (itemizing a plaintiff's required showing in four parts: (1) the employee engaged in statutorily protected activity; (2) the employee suffered a materially adverse action; (3) the employee met his or her employer's legitimate expectations; and (4) the employee was treated less favorably than some similarly situated employee who did not engage in statutorily protected activity). "If the defendant presents no evidence in response, the plaintiff is entitled to summary judgment. If the defendant presents unrebutted evidence of a non-invidious reason for the adverse action, he is entitled to summary judgment. Otherwise there must be a trial."[4] *Stone*, 281 F.3d at 644.

**B. Application**

"Evidence, though not conclusive, that the cause [of the adverse employment action] was retaliation [for engaging in protected activity] should be enough to entitle a plaintiff to a jury trial unless the defendant can produce uncontradicted evidence that he would have fired the plaintiff anyway. *Stone*, 281 F.3d at 643. The parties agree that Plaintiff's complaints regarding sex-based wage discrimination, sexual harassment, and her EEOC filing are protected acts under Title VII, and that her termination was an adverse employment action. I turn first, then, to

---

[4] This volley back and forth between the parties under the indirect method of proving retaliation is often explained in terms borrowed from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, generally, Stone*, 281 F.3d 642-44. First, a plaintiff alleges discrimination, then the defendant asserts that the adverse action was taken for non-invidious reasons, and finally the plaintiff responds with an effort to show that defendant's proffered reason is mere pretext for discrimination. *See, e.g., Argyropoulos*, 539 F.3d at 736.

To my mind, this inquiry is already baked in to the direct method of proving retaliation, particularly in light of the Court's relatively recent clarifying comments on the direct method. *See Sylvester*, 435 F.3d at 902-03; *Stone*, 281 F.3d 642-44. A plaintiff's demonstration that, (1) the only distinction between him and other similarly situated employees is that the plaintiff engaged in protected activity, and (2) only the plaintiff was then subjected to an adverse employment action, is surely circumstantial evidence tending to show that the adverse action was in fact a result of the protected activity. *See Sylvester*, 453 F.3d at 902 (discussing the role circumstantial evidence may play in the direct method). The defendant may then "contradict" that evidence by showing that "he would have taken the adverse employment action against the plaintiff [for some non-invidious reason], even if he had had no retaliatory motive." *Stone*, 281 F.3d at 644 (discussing the direct method). Finally, one way in which the plaintiff may surely "rebut" such evidence is to show that the non-invidious reason for the adverse action was mere pretext for retaliation. *See id*; *see also Argyropoulos*, 539 F.3d at 736, n. 6.

6

Plaintiff's evidence that the termination occurred as a result of the protected activity.[5]

Plaintiff's evidence consists of her father's sworn testimony that Steve Karlin told him "multiple times" that he would fire Plaintiff for bringing the EEOC charges. And it consists of Sean Karlin's testimony that Steve Karlin threatened to fire *him* if Plaintiff did not drop her EEOC claim. It includes Plaintiff's testimony that she was fired (for the first time) within days of informing Steve Karlin that she would be filing charges with the EEOC. And it includes Steve Karlin's violent outburst in response both to Plaintiff's complaints regarding alleged wage discrimination and Chuck Karlin's subsequent decision to lower David Karlin's salary.

Finally, Plaintiff's evidence also includes circumstantial evidence that implicates the indirect method of proving retaliation. This is evidence that Plaintiff and David Karlin were similarly situated employees, that Plaintiff met her employer's reasonable expectations, and that only Plaintiff, after having engaged in protected activity that her employer found objectionable, was subjected to an adverse employment action.

Plaintiff's evidence is not conclusive, and Defendant offers contradictory evidence in response. In sworn testimony, Steve Karlin denied making any threats to fire anyone over the EEOC charges, and he denied that Plaintiff informed him that she would be filing charges shortly before she was fired for the first time. Defendant has also introduced evidence that, absent any alleged retaliatory motive, Plaintiff would still have been fired for non-invidious reasons. Steve

---

[5] Defendant's motion to strike Plaintiff's Local Rule 56.1 Response to Defendant's Statement of Material Facts is denied. Plaintiff has voluntarily withdrawn paragraphs 11, 12, 14, and 19 of her Response as improper. As for the rest, I recognize that more than a few of Plaintiff's responses could have been more concise and are somewhat argumentative. I am persuaded by Judge Lefkow's reasoning in *In re NeoPharm, Inc. Securities Litigation*, 705 F.Supp.2d 946, 963 (N.D.Ill. 2010), however, where she excused improper denials because they were prompted in part (as I believe they were here) by "defendants having favorably characterized, rather than plainly stated" their own facts. Like Judge Lefkow, I have disregarded certain noncompliant portions of Plaintiff's response.

With respect to Plaintiff's Statement of Additional Facts, I similarly find that Plaintiff's filing is sufficiently within the "spirit, if not the letter of the Local Rule." *See Portis v. City of Chicago*, 510 F.Supp.2d 461, 463 (N.D.Ill. 2007). Defendant's motion to strike Plaintiff's Statement of Additional Facts is also denied.

Karlin testified that the company had seen a 40% drop in sales prior to Plaintiff's termination, and that she was fired along with several other employees for economic reasons. Steve Karlin also testified that Plaintiff, in connection with the broader dispute plaguing the Karlin family, was a disruptive presence in the office, and that this disruptiveness also warranted her dismissal.

Plaintiff, however, has sufficiently rebutted this contradictory evidence so as to escape summary judgment. The evidence for both sides with respect to the threats consists simply of contradictory testimony. Plaintiff has responded to Defendant's proffered non-invidious explanation relating to the downturn in business with evidence that Defendant hired twenty-one additional employees during the relevant time period. As for Plaintiff's alleged disruptiveness, on the facts presented to me, the disruption caused by the family dispute has become sufficiently intertwined with the disruption allegedly caused by hostile reactions to Plaintiff's protected activity to make it impossible to conclusively determine, at this stage, that her termination was a result of one and not the other.

Defendant raises several points with respect to the scope of Plaintiff's claim. First, as Defendant notes, acts occurring more than 300 days prior to Plaintiff's April 2009 EEOC filing are time-barred and therefore are not actionable. The actionable retaliatory act here is thus Plaintiff's August 2010 termination. Second, I note that the threats that are alleged to have occurred are not themselves actionable as retaliatory, but are rather pieces of circumstantial evidence that may tend to show that Plaintiff's termination was retaliatory. *See generally Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1031 (7th Cir. 2004). Third, further clarifying the scope of Plaintiff's claim, I find that the cancellation of Plaintiff's company gas card is not sufficiently materially adverse to be actionable as retaliatory. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Like the alleged threats, cancellation of the gas

card is simply circumstantial evidence that may tend to show that Plaintiff's termination was retaliatory, and it will be for the trier of fact to determine what weight to give it in evaluating Plaintiff's claim.

Finally, it bears noting that the Supreme Court has made clear that Title VII does not bar an employee from using time-barred acts as background evidence in support of a timely claim. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, the narrative leading to Plaintiff's August 2010 termination, much of which occurred prior to the 300-day statutory cutoff, may nevertheless be found relevant to the extent it supports Plaintiff's timely claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: November 16, 2012